# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE, | : |
| Plaintiff, | : |
| v. | : |
| DELAWARE COUNTY; | : |
| GEO GROUP; | : Case No: |
| DAVID BYRNE, *in his individual and official capacity as Facility Administrator or Warden of George W. Hill Correctional Facility ("GWHCF")*; | : JURY TRIAL DEMANDED |
| LAURA WILLIAMS, *in her official capacity as Warden of GWHCF*; | : |
| DEBRA MCFADDEN, *in her individual and official capacity as Infectious Disease Nurse at GWHCF*; | : |
| KRISTIN [LNU], *in her individual and official capacity as Head of Nursing at GWHCF*; | : |
| JOSEPH [LNU], *in his individual and official capacity as a Counselor at GWHCF*; | : |
| UNKNOWN GWHCF HEALTH SERVICES ADMINISTRATION STAFF, *in their individual and official capacities*, | : |
| Defendants. | : |

## **COMPLAINT**

Plaintiff John Doe,[1] through his undersigned counsel, respectfully files this complaint against Defendants Delaware County, GEO Group, David Byrne, Laura

---

[1] A pseudonym has been used in place of Plaintiff's full name due to privacy concerns. Plaintiff will file a motion requesting that he be permitted to proceed under pseudonym because he has a reasonable fear of severe harm should his HIV-positive status be revealed. *See Doe v. Megless*, 654 F.3d 404, 408-9 (3d. Cir. 2011) (endorsing a non-comprehensive balancing test, which balances "whether a litigant has a reasonable fear of severe harm that outweighs the public's interest in open litigation," and including HIV

Williams, Debra McFadden, Kristin [Last Name Unknown ("LNU")], Joseph [LNU], and Unknown GWHCF Health Services Administration Staff (collectively "Defendants"), and hereby alleges, on the basis of his personal knowledge and on information and belief, as follows:

## INTRODUCTION AND BACKGROUND STATEMENT

1. This is an action brought under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.* ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* ("Rehabilitation Act"), Pennsylvania's Confidentiality of HIV-related Information Act, 35 P.S. § 7601 *et seq.*, and applicable state law seeking all available relief to redress the violations of his rights.

2. This action stems from Defendants' unlawful discrimination in denying John Doe's participation in the work program at GWHC and its attendant benefits, including loss of a paid work assignment, housing in the workers' block, and the ability to earn "good time" credits—because of John Doe's disability, HIV, and the unlawful disclosure of his confidential HIV-related information.

3. Additionally, as a direct result of Defendants' actions and omissions, John Doe suffered emotional distress, humiliation, embarrassment, and other dignitary harms, as set forth below.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise

---

status as an example of an area where courts have permitted plaintiffs to proceed with pseudonyms).

under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy.

5. This Court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

6. Venue is proper in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b)(1) because the events giving rise to the claims occurred in this judicial district, all Defendants were acting under color of state law during all relevant times, and on information or belief, at least some Defendants were employed or conducted business in this district.

## PARTIES

7. **PLAINTIFF JOHN DOE** is an adult man living with a disability as defined under the ADA and the Rehabilitation Act. In January 2020, he was diagnosed as living with HIV. At all times relevant to this action, John Doe was detained at George W. Hill Correctional Facility. Presently, John Doe resides in this judicial district.

8. **DEFENDANT DELAWARE COUNTY** is a municipal corporation organized under the laws of the Commonwealth of Pennsylvania. Delaware County maintains and is responsible for the care and custody of pre-trial detainees and persons serving a sentence at the George W. Hill Correctional Facility ("GWHCF"). Delaware County receives federal financial assistance for the operation of George W. Hill Correctional Facility. The operation of GWHCF is governed by the Administrative Code

3

of Delaware County and by the regulations governing correctional facilities issued by the Pennsylvania Department of Corrections.

9. **DEFENDANT GEO GROUP, INC.** ("GEO Group") is a private for-profit correctional management company, an international investment trust that invests in private prison and mental health facilities and operates government-owned facilities pursuant to management contracts. As of December 31, 2019, the company managed and/or owned 95,000 beds at 129 facilities in North America, Australia, South Africa and the United Kingdom.[2] GEO Group's principal office is located at 4955 Technology Way, Boca Raton, Florida, 33431. At all times relevant to this action, GEO Group managed GWHCF and implemented and enforced policies that govern access to programs and services at GWHCF and confidential medical information, including HIV-related information. GEO Group receives federal financial assistance for the operation of George W. Hill Correctional Facility.

10. **DEFENDANT DAVID BYRNE** was, at all times relevant to this action, the Facility Administrator or Warden at George W. Hill Correctional Facility in Delaware County, Pennsylvania. On information and belief, David Byrne was an employee of Defendant Delaware County and acting under color of state law. The Warden has contract oversight authority and retains rulemaking and adjudicative powers at GWHCF. He is sued in his individual and official capacity.

---

[2] The GEO Group, Inc., 2019 Annual Report (Form 10-K). *Available at*: https://www.sec.gov/ix?doc=/Archives/edgar/data/923796/000119312520049748/d841729d10k.htm

4

11. **DEFENDANT LAURA WILLIAMS** is the current Warden of George W. Hill Correctional Facility and is acting under color of state law. Defendant Williams is sued in her official capacity.

12. **DEFENDANT DEBRA McFADDEN** was, at all times relevant to this action, an Infectious Disease Nurse at George W. Hill Correctional Facility. She is sued in her individual and official capacity.

13. **DEFENDANT KRISTIN [Last Name Unknown ("LNU")]** was, at all times relevant to this action, Head of Nursing at George W. Hill Correctional Facility. She is sued in her individual and official capacity.

14. **DEFENDANT JOSEPH [LNU]** was, at all times relevant to this action, a Counselor at George W. Hill Correctional Facility. He is sued in his individual and official capacity.

15. **DEFENDANT(S) UNKNOWN GWHCF HEALTH SERVICES ADMINISTRATION STAFF** were, at all times relevant to this action, employed in the Health Services Administration at George W. Hill Correctional Facility. They are sued in their individual capacities and official capacities.

16. All of the above Defendants, and those subject to their supervision, direction, and control, intentionally performed, participated in, aided and/or abetted in some manner, the acts alleged herein, and/or proximately caused the harm alleged herein.

**STATEMENT OF FACTS**

17. In mid-January of 2020, just prior to his incarceration, John Doe was diagnosed with HIV.

18. John Doe is limited in his major life activities and as such is a person with a disability, as defined under the ADA and the Rehabilitation Act.

19. HIV is a physical impairment that without ameliorative measures in place substantially limits one or more major life activities, including but not limited to his immune system, reproductive system, and cell growth.

20. John Doe only disclosed to his medical provider and his two closest friends that he was living with HIV.

21. On February 16, 2020, John Doe was arrested on drug possession and paraphernalia charges and brought to detention at George W. Hill Correctional Facility ("GWHCF").

22. His arrest triggered a Violation of Probation ("VOP") detainer from Adams County, Pennsylvania, where he was under probation. John Doe remained in custody at GWHCF until a VOP hearing was held before the Adams County judge supervising his probation.

23. During the intake process at GWHCF, John Doe disclosed his recent HIV diagnosis to GWHCF medical staff.

24. At no point did John Doe authorize GWHCF medical staff to share his HIV diagnosis or any HIV-related information with anyone.

25. On or about a week after arriving at GWHCF, John Doe started on HIV medications for treatment.

26. At GWHCF, John Doe was initially housed on a general population block, where he was open about his sexual orientation and as a result, was harassed by other

incarcerated people. He was fearful of the harassment and believed it would lead to violence.

27. John Doe reported this harassment to Correctional Officer Brown. Officer Brown encouraged John Doe to apply for a prison job, which would permit him to move to a workers' block. Based on his conversations with Officer Brown, he believed that moving to the workers' block would protect him from the ongoing harassment.

28. In early March 2020, John Doe applied for a job in the GWHCF kitchen. He was soon moved to Unit 6A, a workers' block.

29. On the morning of March 18, 2020, John Doe was informed by a correctional officer that he was on the list to attend a medical class later that day.

30. John Doe understood this to be an infection control class on food safety and that the class was required to work in the GWHCF kitchen.

31. That afternoon John Doe was permitted to leave his block and to travel to the classroom at the appropriate time. When he arrived at the medical class as scheduled, however, Defendant McFadden, the class instructor, stopped him before he could enter the room. Defendant McFadden told John Doe the class was full, and that he was to return to his cell.

32. John Doe believes that Defendant McFadden denied him admission to the class because she had become aware of his HIV-positive status.

33. On his way back to his cell after being refused admission to the class, John Doe encountered his Unit Counselor, Oscar Lemus Rojas. John Doe told Unit Counselor Rojas what happened when he tried to enter the class. Unit Counselor Rojas told John Doe

that it was his understanding that John Doe had been denied because he was not medically cleared.

34. A few days after Defendant McFadden denied John Doe admission to the class, John Doe was transferred out of the worker block and sent to Unit 8 for a few days. Eventually he was moved to Block 2CX, Unit 102.

35. By the end of March 2020, the COVID-19 pandemic had triggered court closures and delays. Due to the combination of his Adams County detainer and Covid-19 court delays, John Doe expected to be detained at GWHCF for months.

36. Through an informal process, John Doe sought clarification from several GWHCF staff members regarding the status of his application to be a kitchen worker and whether he was eligible for other jobs at GWHCF.

37. John Doe spoke with GWHCF's Psychiatric Nurse Practitioner, Nina [LNU] expressing confusion as to whether he could take the class at another time when it was not full or was he prohibited from taking the class for medical reasons. After speaking with Defendant McFadden, Nurse Nina informed John Doe that Defendant McFadden had told her that he was "not medically cleared for certain jobs."

38. Nurse Nina told John Doe that Defendant McFadden was following up with her Supervisor Defendant Kristin [LNU], the Head of Nursing, about his medical clearance. Neither Nurse Nina nor Defendant McFadden provided John Doe with any additional information.

39. On April 9, 2020, John Doe submitted an Inmate Request for Information form to his counselor, asking why he was not medically cleared to work in the kitchen and seeking information about other jobs that might be available to him.

40. On April 13, 2020, Jackson, another incarcerated person at GWHCF, who was responsible for delivering intra-prison correspondence on John Doe's block, hand-delivered the April 9, 2020 Request for Information form back to John Doe. The bottom third of the form was folded up, but the written response was easily viewable.

41. On the bottom of the Request for Information form was written, "You were not cleared to work in the kitchen because you have <u>HIV</u>." HIV was underlined 3 times. The form was signed by Defendant Joseph [LNU] and dated April 10, 2020.

42. John Doe felt embarrassed and shocked by the emphasis placed on <u>HIV</u> in Defendant Joseph's response. He was concerned that the form disclosed his HIV-related information to Jackson and to anyone else who had seen it.

43. On the morning of April 14, 2020, John Doe spoke to the nurse distributing medications about the form. The nurse informed him that counselors should not have access to information about medical conditions of incarcerated people at GWHCF, including HIV-related information.

44. That afternoon, during a medical appointment, John Doe was informed by the Physician Assistant [name unknown] that HIV should not prevent him from working in the kitchen.

45. On April 14, 2020, the Assistant Facility Administrator emailed a Delaware County employee requesting that Delaware County release John Doe on bail or have him enter a plea.

46. On April 15, 2020, John Doe became aware that his HIV-positive status had become general knowledge among other incarcerated people on his block when he heard

9

someone shouting that "102 has AIDS!" This was a reference to John Doe, who was housed in cell 102.

47. Horrified and angered that other people learned his HIV-positive status, John Doe met with Sarah Bowles, the GWHCF Prison Rape Elimination Act (PREA) Coordinator to discuss his confidentiality concerns and his safety.

48. On April 22, 2020, during a medical appointment, John Doe discussed with Dr. Phillips what had happened. Dr. Phillips confirmed that living with HIV should not prevent John Doe from working in the kitchen. Dr. Phillips said he would write a note to that effect in the computer system and that this would override Defendant McFadden.

49. On April 25, 2020, John Doe filed a "Step 1 Inmate Grievance Form," as required under GWHCF's grievance process, regarding both aspects of Defendants illegal conduct.

50. Grievance number 20-04-212, dated April 25, 2020, addressed the confidentiality of his medical information:

> "Joe the counselor some how [sic] gained access to my specific medical condition when I wrote to him why I was denied clearance for kitchen and how wrote on the slip back to me the exact name of the condition, that's not okay, now inmates disclosed they know the condition […] I'm grieving him for improper disclosure and deformation [sic] of my character."

51. Grievance number 20-04-213, dated April 25, 2020, addressed GWHCF's denial of a prison job:

> "I never received a job while on Unit 6, I originally applied for the Kitchen, but got denied clearance, but never a reason why, and the counselors never offered me a job that doesn't require medical clearance. I'm grieving Unit 6 counselors for discrimination and failure to follow prison guidelines & procedures."

10

52. On or about April 30, 2020, John Doe received Disposition of Grievance responses to his two grievances, both signed by GWHCF Grievance coordinator Gabrielle Price and dated April 30, 2020.

53. In response to Grievance number 20-04-212, addressing the confidentiality of John Doe's medical information, Gabrielle Price wrote: "I understand your concern. However, per the HSA, staff is permitted to know the medical condition(s) of inmates"

54. In response to Grievance number 20-04-213, addressing GWHCF's denial of a prison job, Gabrielle Price wrote: "In order to be eligible for a job, inmates must attend a medical class. You were on the list to attend a medical class on 3/18/20 but did not show."

55. On May 7, 2020, John Doe filed two "Step 2 Inmate Grievance Forms."

56. In response to the answer to Grievance number 20-04-212 addressing the confidentiality of John Doe's medical information, he wrote:

> "They are not permitted to know my particular condition. It's stated on page 12 of the handbook. Now inmates know and some went run around yelling it out loud to taunt and tease me. It's bad enough they used it to discriminate [sic] me out of the kitchen but now it's out there. No administrative remedies can fix this. I'd like to know [who] is responsible. This is HIPPA [sic] law violated, improper disclosure and deformation [sic] of my character."

57. On May 12, 2020, John Doe submitted an Inmate Request for Information to Defendant Byrne, seeking an update into the investigation regarding both his Step 2 confidentiality and discrimination grievances, as well as his request for policy information from the Health Administration. A few days later, John Doe sent another note to Defendant Byrne asking him to confirm receipt of John Doe's Step 2 grievances and seeking follow-up.

58. On or about May 28, 2020, John Doe received a letter from Defendant Byrne, responding to the Step 2 grievances stating that John Doe's concerns/issues have been addressed and that per policy John Doe did not meet the requirements to work in the kitchen, medical, or as a barber, but he is permitted to work in all other areas within the facility such as clerk, sanitation, maintenance or as any housing unit worker.

59. John Doe filed several additional grievances regarding the unlawful violation of his privacy rights, the discriminatory action of GWHCF to deny him a kitchen job, and the refusal of the Health Services staff to share policies.

60. Rather than address his concerns as required by GWHCF policies and procedures, Defendants responded to these grievances by supplying John Doe repeatedly with additional copies of the May 28, 2020, letter from Defendant Byrne.

61. John Doe exhausted the GWHCF grievance process, but the discrimination issue and disclosure of his HIV-related information issue were not resolved.

62. In a June 23, 2020, form signed by Defendant McFadden, it stated that John Doe was not cleared to work in the kitchen or barber shop. In handwriting, it stated that John Doe may work "in any other department."

63. Defendants failed to conduct an individualized assessment of John Doe and denied him the kitchen job and the benefits of the work program because he is living with HIV.

64. On or after June 23, 2020, John Doe began a job as a sanitation worker. He continued working in this position until his release from GWHCF on July 20, 2020.

65. Defendants unlawfully disclosed John Doe's confidential HIV-related information to correctional staff—not involved in providing him healthcare—and to other

incarcerated people, in direct violation of both the law and alleged official policies of GWHCF.

66. Defendants' impermissible handling by its staff of John Doe's confidential HIV-related information led directly to other incarcerated people learning he is living with HIV. As a result, John Doe became the subject of gossip, harassment, and was fearful of potential threats to his safety by other incarcerated people.

67. As a result of Defendants' disclosure of his confidential HIV-related information, John Doe lost control over private health information with which he had barely begun to grapple and had only shared with his closest friends and his doctor.

68. As a result of Defendants' disclosure of John Doe's confidential HIV-related information, John Doe lost confidence that healthcare systems, on which he must depend as a person living with HIV, will safeguard his privacy.

## COUNT I

### DISCRIMINATION ON THE BASIS OF DISABILITY
### AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 ET SEQ.
### (Against Defendant Delaware County)

69. John Doe repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

70. As a result of living with HIV, John Doe's major life activities are limited. As such, he has a "disability" within the meaning and scope of Title II of the ADA, 42 U.S.C. § 12132, and is entitled to the protection of the ADA which states that "no qualified individual with a disability shall, by reason of such disability, be excluded from the participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." Accordingly, John Doe is a

member of the class of persons protected by the ADA.

71. "[P]risons fall squarely within Title II's statutory definition of 'public entity,' which includes 'any ... instrumentality of a State ... or local government.'" *Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206 (1998) (cleaned up).

72. As a detainee at GWHCF, John Doe was a "qualified individual" under Title II of the ADA.

73. Defendants violated John Doe's rights under Title II of the ADA by denying him the benefits of public services, programs, and activities because of his disability by, inter alia, denying him work placement in the kitchens and the benefits of the work program, and by failing to provide proper and reasonable training to employees, contractors, or agents of Delaware County.

74. As a direct and legal result of Defendants' actions and omissions, John Doe was denied participation in the work program at GWHC and benefits of the work program including loss of a paid work assignment, housing in the workers' block, and ability to earn good time credits. He has also suffered emotional distress, humiliation, embarrassment, loss of dignity, and continues to suffer harm.

## COUNT II
## VIOLATION OF THE REHABILITATION ACT
## 29 U.S.C. 794
## (Against Defendants Delaware County and GEO Group)

75. John Doe repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

76. Defendants receive federal financial assistance through multiple avenues, including the Medicaid program, which is jointly funded by the federal government and the state.

77. John Doe is a qualified individual with a disability which substantially limits his major life activities.

78. Defendants Delaware County and GEO discriminated against and caused John Doe to be excluded from participation in programs, services, and activities at George W. Hill Correctional Facility due to his disability, in violation of Section 504 of the Rehabilitation Act.

79. As a direct and legal result of Defendants' actions and omissions, John Doe was denied participation in the work program at GWHC and benefits of the work program including loss of a paid work assignment, housing in the workers' block, and ability to earn good time credits. He has also suffered emotional distress, humiliation, embarrassment, loss of dignity and continues to suffer harm.

## COUNT III
## PENNSYLVANIA CONFIDENTIALITY OF HIV-RELATED INFORMATION ACT, 35 P.S. §§ 7601 *et seq*.
### (Against All Defendants)

80. John Doe repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

81. Defendants impermissibly and without consent disclosed John Doe's HIV-related information, in violation of Pennsylvania law and its own purported official policies.

82. Under Pennsylvania's Confidentiality of HIV-related Information Act, 35 P.S. § 7601 *et seq*., certain covered individuals and entities are prohibited from disclosing HIV-related information, without the consent of the subject.

83. Pursuant to 35 P.S. § 7603, an institutional health care provider is defined as "a hospital, nursing home, hospice, clinic, blood bank, plasmapheresis or other blood product center, organ or tissue bank, sperm bank, clinical laboratory, residential or outpatient drug and alcohol rehabilitation service, mental health facility, mental retardation facility, home care agency as defined in this act, or any health care institution required to be licensed in this Commonwealth whether privately or publicly operated."

84. Defendants Delaware County, and GEO Group, are "institutional health care provider[s]" as defined by 35 P.S. § 7603 and are subject to the disclosure laws of HIV-related information.

85. Pursuant to 35 P.S. § 7603, an individual healthcare provider is defined as "[a] physician, nurse, emergency medical services, worker, chiropractor, optometrist, psychologist, nurse-midwife, physician assistant, dentist or other person, including a professional corporation or partnership, providing medical, nursing, drug or alcohol rehabilitation services, mental health services, other health care services or an employee or agent of such individual or an institutional health care provider."

86. Defendant(s) Unknown GWHCF Health Services Administration Staff are "individual health care provider[s]" as defined by 35 P.S. § 7603 and are subject to the laws regarding disclosure of confidential HIV-related information.

87. Under Section 7603, "confidential HIV-related information" is defined as "any information which is in the possession of a person who provides one or more health or social services or who obtains the information pursuant to a release of confidential HIV-related information and which concerns whether an individual has been the subject of an HIV-related test, or has HIV, HIV-related illness or AIDS; or any information which

16

identifies or reasonably could identify an individual as having one or more of these conditions, including information to the individual's contacts."

88. John Doe's HIV-positive status is confidential HIV-related information covered by 35 P.S. § 7603.

89. Defendants Delaware County, and GEO Group, are liable for the conduct of their agents and/or employees.

90. Defendants Delaware County, GEO Group, Byrne, Williams, McFadden, and Kristin [LNU] failed to assure that their employees and/or agents adhere to statutorily mandated privacy procedures regarding confidentiality and disclosure of an individual's HIV-positive status. Defendant Byrne, Defendant Williams, Defendant McFadden and Defendant Kristin [LNU] are sued in their official capacities.

91. Defendant(s) Unknown GWHCF Health Services Administration Staff violated 35 P.S. § 7607(a) when they shared John Doe's HIV-positive status with Defendant Joseph LNU.

92. 35 P.S. § 7607(b) prohibits subsequent disclosure. "[N]o person to whom confidential HIV-related information has been disclosed under this act may disclose that information to another person, except as authorized by this act."

93. None of the exceptions to the state law apply to these disclosures.

94. As a direct and proximate result of these breaches of confidentiality, John Doe's HIV status was impermissibly disclosed.

95. As a further proximate result of this unlawful breach of confidentiality, John Doe has experienced emotional pain and suffering.

96. John Doe continues to experience emotional pain and suffering because he no longer knows who is privy to information he had not consented to be shared.

97. As a person living with HIV, John Doe is dependent on medical care and health systems to maintain his health. John Doe will continue to be dependent on medical care and health systems for the foreseeable future to manage his HIV. John Doe's first experience of receiving HIV-related care led directly to completely losing control over his private medical information. John Doe's confidence that the health care systems—on which he must depend—will protect his privacy has been irreparably damaged.

98. John Doe seeks compensatory damages pursuant to 35 P.S. § 7610.

## **PRAYER FOR RELIEF**

Wherefore, John Doe respectfully requests that this Court enter judgment:

a. Declaring Defendants' conduct in denying John Doe the opportunity to work in the GWHCF kitchen violative of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act,

b. Declaring Defendants' handling of John Doe's HIV-related medical information violative of Pennsylvania's Confidentiality of HIV-related Information Act;

c. Entering injunctive relief enjoining Defendants, their agents and employees from engaging in unlawful discriminatory practices on the basis of disability;

d. Entering injunctive relief requiring Defendants, their agents and employees, to develop, implement, and enforce a clearly written anti-

      discrimination policy, ensuring that they will not discriminate against any person living with HIV;

e. Entering injunctive relief requiring Defendants, their agents, and employees to conduct mandatory training for all staff based on current and accurate information regarding HIV as a chronic but manageable medical condition, HIV transmission and the effect of a low or undetectable viral load on transmission risk, and the appropriate use of universal precautions in the few contexts in which HIV is transmissible;

f. Entering injunctive relief requiring Defendants, their agents and employees, to develop and implement a written confidentiality policy—to be announced and publicly posted—ensuring that they will not unlawfully disclose private health information, including HIV-related medical information;

g. Entering injunctive relief requiring Defendants, their agents and employees, to conduct mandatory training for all staff regarding patient confidentiality requirements, which includes a description of the prohibition on disclosure of HIV-related medical information under Pennsylvania law;

h. Awarding compensatory and actual damages to Plaintiff in an amount to be determined at trial;

i. Awarding punitive damages to the extent permitted by law;

j. Awarding reasonable attorneys' fees and costs to the extent permitted by law; and

    **k.** Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff request a trial by jury on all matters as to which he is entitled by law.

                                     Respectfully submitted,

Dated: April 8, 2022

                                     *s/ Ronda B. Goldfein*_____
Ronda B. Goldfein (PA 61452)
Adrian M. Lowe (PA 313614)
AIDS LAW PROJECT OF PENNSYLVANIA
1211 Chestnut Street, Suite 600
Philadelphia, PA 19107
goldfein@aidslawpa.org
alowe@aidslawpa.org
215-587-9377

Richard Saenz*
LAMBDA LEGAL DEFENSE
& EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Phone: (212) 809-8585
rsaenz@lambdalegal.org

Kara N. Ingelhart*
LAMBDA LEGAL DEFENSE
& EDUCATION FUND, INC.
65 E. Wacker Pl., Suite 2000
Chicago, IL 60601
Phone: (312) 663-4413
kingelhart@lambdalegal.org

Scott A. Schoettes*
SCOTT A. SCHOETTES, ESQ.
4728 N. Malden Street
Chicago, IL 60640
Phone: (773) 474-9250
sschoettes@gmail.com

*Attorneys for Plaintiff*

*\*Motion for Pro Hac Vice Admission forthcoming*